UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
Boston Copyright Associates, Ltd.,       )        CIVIL ACTION NO.:
                                         )
                    Plaintiff     )
                                       )
            vs.          )
                                       )
U-Haul International, Inc.; U-Haul of     )
Massachusetts and Ohio, Inc.; Amerco, Inc.; )
Pregis Innovative Packaging, Inc.; and    )
Pregis Corporation,                )
                                       )
                    Defendants   )
_____)

## COMPLAINT

Boston Copyright Associates, Ltd., the plaintiff in the above-captioned civil action, by its attorney, for its complaint against the defendants alleges and sets forth the following:

## FIRST CLAIM

I.    NATURE OF THE CLAIM:

    1.  This is an action for infringement of the United States copyright in a sculptural work (a figurine) authored by the late German artist Berta Hummel (a Franciscan sister known as Maria Innocentia Hummel) who authored/co-authored the well-known "Hummel figurines," the plaintiff having acquired legal and/or beneficial copyright ownership in said sculptural work (a Hummel figurine) from the relative and successors in interest of the artist/author.  The defendants and/or those in privy with them have created an infringing two-dimensional derivative of the work protected by the aforementioned copyright and the defendants have

infringed, and continue to infringe, said copyright by the production, supply, display, advertising, shipping, and/or sale of their product packaged in a carton prominently depicting a large reproduction of their infringing two-dimensional derivative work.

II.     THE PARTIES:

2.  The plaintiff is Boston Copyright Associates, Ltd. ("Boston"), a Massachusetts business corporation having its principal place of business at care of Hemenway & Barnes, LLP, 60 State Street, Boston, Massachusetts 02109.

3.  The defendants are:

> (i)     U-Haul International, Inc.;
>
> (ii)    U-Haul of Massachusetts and Ohio, Inc.;
>
> (iii)   Amerco, Inc.;
>
> (iv)    Pregis Innovative Packaging, Inc.; and
>
> (v)     Pregis Corporation.

Collectively, these five defendants are hereinafter referred to as the "Defendants."

4.  The defendant U-Haul International, Inc. ("U-Haul") is a Nevada corporation, with its office at 2721 N. Central Avenue, Phoenix, Arizona  85004.  U-Haul is a wholly-owned subsidiary of the defendant Amerco, Inc.

5.  The defendant Amerco, Inc. ("Amerco") is a Nevada corporation having its principal office at 1325 Automotive Way, Suite 100, Reno, Nevada  89502. Amerco describes itself as "The parent company of U-Haul, North America's largest 'do-it-yourself' moving and storage operator . . . ."

6.  The defendant U-Haul of Massachusetts and Ohio, Inc. ("U-Haul Mass.") is a Massachusetts domestic profit corporation, having a principal office at 151 Linwood Street,

Somerville, Massachusetts 02143. As registered with the Massachusetts Secretary of the Commonwealth, Corporations Division, U-Haul Mass.'s registered office in Massachusetts is at CT Corporation System, 155 Federal Street, Boston, Massachusetts  02110; U-Haul Mass.'s registered agent at that office is CT Corporation System.

7.   The defendant Pregis Innovative Packaging, Inc. ("Pregis Packaging") is a Delaware corporation with its principal office at 1650 Lake Cook Road, Suite 400, Deerfield, Illinois 60015.  As registered with the Massachusetts Secretary of the Commonwealth, Corporations Division, Pregis Packaging's registered office in Massachusetts is at CT Corporation System, 155 Federal Street, Boston, Massachusetts  02110; Pregis Packaging's registered agent at that office is CT Corporation System.  Pregis Packaging is a wholly owned subsidiary of the defendant Pregis Corporation.

8.   The defendant Pregis Corporation ("Pregis") is a Delaware corporation with its principal office at 1650 Lake Cook Road, Suite 400, Deerfield, Illinois 60015.

III.     JURISDICTION AND VENUE:

9.   This Court has exclusive original subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. § 1338.

10.   This Court has personal jurisdiction over the Defendants since they are subject to valid service of process upon them, within the Commonwealth of Massachusetts, by substitute service upon them by means of service upon the Secretary of State of the Commonwealth, and/or by means of service upon them as provided by Rule 4(h)(3) F.R.C.P. and by the Massachusetts Long Arm Statute, General Laws  c. 223A, § 3 (2010 ed.).

11.   Venue in this Civil Action for copyright infringement is proper pursuant to 28 U.S.C. § 1400, since, as alleged in the preceding paragraph, this Court has personal jurisdiction over the defendants, and they can therefore be found in the Commonwealth of Massachusetts.

IV.   THE CREATION OF THE COPYRIGHTED WORK THAT IS THE SUBJECT OF THIS INFRINGEMENT CLAIM, THE UNITED STATES COPYRIGHT IN THIS WORK, AND THE RESULTING LEGAL AND/OR BENEFICIAL COPYRIGHT OWNERSHIP INTEREST OF THE LEGAL HEIRS/RELATIVES/SUCCESSORS IN INTEREST OF THE WORK'S AUTHOR:

12.   The late German artist Berta Hummel, a Franciscan sister who took the name Maria Innocentia Hummel (signature "M. I. Hummel") created, before her untimely death in 1946, a large number of graphic works showing stylized pictures of children ("Hummel Pictures"), and also authored and/or co-authored a large number of ceramic statuettes/figurines (the "Hummel Figurines").  The Hummel Pictures and the Hummel Figurines are collectively referred to as "Hummel Art."

13.   Pursuant to license agreements with a German company named W. Goebel Porzellanfabrik KG [W. Goebel Porcelain Company Limited Partnership] ("Goebel"), beginning in 1935, the Hummel Figurines were manufactured by Goebel and exported to the United States in volume before and after World War II.

14.   The Hummel Figurines (also called "statuettes"), which became known in the United States as "Hummel figurines," "Hummel figures," or "Hummels," became extremely well-known, long-time collectibles in America, and became the subject of numerous guide books, articles, and collectors' clubs.

15.   After Goebel's bankruptcy several years ago, the Hummel Figurines are still manufactured in the same location in Roedental, Germany by a successor company named Manufaktur Roedental ["Roedental Manufacture"] ("Manufaktur").

4

16.   One of the Hummel Figurines created, and exported to the United States before World War II was a figurine having the number designation, in Goebel's German and English language catalogs, of "Hum 95" and, in Goebel's English language catalog, the name "Brother" (the "Brother Figurine"), which depicts a small boy in the traditional folk costume of Bavaria, Germany, standing with his hands in his pockets and with the front of his shoes turned upwards showing the soles.

17.   The Brother Figurine was created by Berta Hummel in 1938.

18.   Berta Hummel was the sole author of the Brother Figurine, as is documented in an affidavit executed and sworn to by Berta Hummel before a United States Vice Consul on June 5, 1939.  That affidavit was utilized by Goebel, who manufactured the Brother Figurine under license.

19.   Under the laws of Germany, the German "Uhrheberrecht" ["copyright"] arose by operation of law in the author Berta Hummel, with Germany having no copyright registration system or other copyright formalities.

20.   The German copyright in the Brother Figurine has remained valid since that work's creation in 1938, and will expire in 2016, seventy years after the death of the author Berta Hummel in 1946.

21.      Consistent with Goebel's policy and practice, the Brother Figurine was first published by means of the exhibition of a sample at Goebel's stand at the famous trade fair in Leipzig, Germany in 1938.

22.      Subsequently, the Brother Figurine was exported to the United States before World War II, with no indication that, after the first publication in Germany, less than thirty-one days elapsed before the first shipment of the Brother Figurine reached the United States from

Germany, and, with no indication that less than thirty-one days elapsed before first publication of the Brother Figurine in the United States.

23.   The Brother Figurine was copyrightable in the United States under the Copyright Act of 1909 since it is an original sculptural work.

24.   The Brother Figurine became a public domain work in the United States due to noncompliance with copyright formalities required by the Copyright Act of 1909.

25.   The Brother Figurine's author, Berta Hummel, was a citizen and resident of Germany, a nation adhering to the Berne Convention.

26.   By reason of the aforesaid, the Brother Figurine is not a United States Work as defined in 17 U.S.C. § 101.

27.   Accordingly, the United States copyright in the Brother Figurine was restored on January 1, 1996 pursuant to the provisions of 17 U.S.C. § 104A(h)(2)(A).

28.   Pursuant to 17 U.S.C. § 104A(b), the restored United States copyright in the Brother Figurine (the "Brother Figurine Copyright") vested initially in Berta Hummel, the author of the Brother Figurine under the laws of Germany, the work's country of origin.

29.   The legal and/or a beneficial owner of the Brother Figurine Copyright, when it was restored by operation of law and vested on January 1, 1996, was Mr. Alfred Hummel ("Mr. A. Hummel"), a German citizen residing in Massing, Germany (who is the nephew of the author Berta Hummel), since, as a result of inheritance, mesne assignments, and/or operation of German and/or American law, Mr. A. Hummel is the successor in interest to Berta Hummel, the author.

30.   Furthermore, as a result of Mr. A. Hummel's contractual right to receive royalties from third parties for utilization of copyrights/renewal copyrights in Hummel Art, including the

6

Brother Figurine Copyright, Mr. A. Hummel was (prior to the assignment to Boston set forth below) also a beneficial owner of the Brother Figurine Copyright.

31.  The specific events by which Mr. A. Hummel became a legal and beneficial owner of the Brother Figurine Copyright are set forth more specifically below.

32.  Berta Hummel died intestate in Germany in 1946.  The German probate court decreed that her parents were her legal heirs.  After the death of Berta Hummel's father in 1953, Ms. Viktoria Hummel, her mother, remained her sole legal heir.

33.  In 1971, Ms. Viktoria Hummel licensed utilization rights in the Hummel Art  to Schmid Management Corporation (later Schmid Brothers, Inc.) ("Schmid"), a Massachusetts corporation, in consideration of payment of royalties.

34.  In addition to her right to receive royalties from Schmid, Ms. Viktoria Hummel also exercised a legal right to control the  utilization of Hummel Art by Schmid with regard to morality and good taste.

35.  As a result of German inheritance law, and as a result of her right to receive royalties for the utilization of the Hummel Art, and as a result of her legal control rights, Ms. Viktoria Hummel was a legal and/or beneficial owner of the United States copyrights/copyright renewals in Hummel Art, and, accordingly, pursuant to 17 U.S.C. § 501(b), she had standing to sue for infringements thereof in the United States.

36.  Furthermore, Ms. Viktoria Hummel assigned the collection of these royalties to a family owned limited partnership which is now named "Berta Hummel Kunst Verwaltungs KG" [Berta Hummel Art Administration LP] ("B. H. Kunst"), which was formed for the purpose of collecting these royalties and distributing them to Hummel family members.

37.  As a result of the aforesaid, B. H. Kunst also became (and remains) a beneficial owner in the United States copyrights/renewals in the Hummel Figurines, and also has standing, pursuant to 17 U.S.C. § 501(b), to sue for infringement thereof in the United States.

38.  After Viktoria Hummel's death in 1983, her son, Mr. Adolf Hummel, was the successor in interest to Viktoria Hummel's control rights and, together with B. H. Kunst, her royalty rights.

39.  The Schmid and Hummel family contractual relationship resulted in copyright litigation with Goebel, the manufacturer of the Hummel Figurines.

40.  Goebel had asserted that it was the proprietor of all United States copyrights/renewals in the Hummel Figurines, and that Viktoria Hummel (and her son) had no ownership interest therein.

41.  Goebel lost a case in the United States District Court for the Eastern District of New York (*Schmid Bros*. v. *W. Goebel Porzellanfabrik KG*, 589 F. Supp. 497 (E.D.N.Y. 1985)) and, as a result of a settlement, Goebel had to agree to pay Mr. Adolf Hummel and B. H. Kunst a royalty on the sale of all Hummel Figurines in the United States.

42.  After Mr. Adolf Hummel's death in 1992, his son, Mr. A. Hummel, was (together with B. H. Kunst) the successor in interest to the royalty rights from Goebel.

43.  Schmid became insolvent in 1993, and, thereafter, Mr. A. Hummel entered into license agreements, and contracts concerning artistic control rights, with Goebel.

44.  Goebel became insolvent in 2006.

45.  The current license by Mr. A. Hummel and B. H. Kunst is to Manufaktur, a successor manufacturer of Hummel Figurines, to utilize, inter alia, the United States copyrights

in Berta Hummel's works (one of which is the Brother Figurine copyright) for the production

and sale of Hummel Figurines, for the payment of royalties to Mr. A. Hummel and B. H. Kunst.

46.  In the license agreement between Mr. A. Hummel and Manufaktur, the latter

acknowledges and confirms that Mr. A. Hummel is the owner, on a world wide basis, of the

author Berta Hummel's copyright interests in her works.

47.  The arrangement for the allocation of royalties paid by the manufacturer/licensee

provides that a percentage of the royalty is allocated directly to Mr. A. Hummel, with the

remainder to B. H. Kunst, which distributes percentage allocations thereof to Hummel family

members, including Mr. A. Hummel.

48.  Under the contract with Manufaktur, Mr. A. Hummel and B. H. Kunst are (and under

the previous contract with Goebel were), entitled to receive royalties to be computed on the exact

number of sales of each individual particular Hummel Figurine in the United States and

elsewhere, and, accordingly, the distinct copyright, including the United States

copyright/copyright renewal, in each particular Hummel Figurine model, has a particular and

distinct contractual royalty payment attributed to it upon a sale thereof.

49.  Manufaktur is currently in insolvency, but, upon information and belief, Hummel

Figurines are currently being produced and a solution has been reached which enables the

continued production of the Hummel Figurines, pursuant to, *inter alia*, the aforementioned

license from Mr. A. Hummel.

50.  While Manufaktur is permitted to use correct images of Hummel Figurines for the

purpose of advertising them, and is permitted to use photographs of the Hummel Figurines on

small labels affixed to the packaging of individual Hummel Figurines in order to identify the

specific Hummel Figurine model a package contains (e.g. the Brother Figurine), neither

Manufaktur, nor any other party, has been licensed by Mr. A. Hummel to create and publish other two- dimensional derivatives of the Brother Figurine for any other purpose(s).

V.   THE ASSIGNMENT TO BOSTON OF CERTAIN COPYRIGHT INTERESTS
     THAT ARE THE SUBJECT MATTER OF THIS ACTION:

51.  Mr. A. Hummel is the director of the Berta Hummel Museum, located at Berta Hummel Strasse 2, 4323 Massing, Germany, which is the house in which Berta Hummel was born and grew up.  The Berta Hummel Museum displays a large collection of Berta Hummel's graphic works and of the Hummel Figurines.  The Berta Hummel Museum receives numerous German and American visitors; it is dedicated to the preservation of Berta Hummel's art, and has published authoritative and scholarly catalogues of that art.  As a result, the Berta Hummel Museum is recognized as a cultural asset by the Ministry of Culture, and receives subsidies from German governmental agencies; however, these subsidies are not sufficient, and the Berta Hummel Museum's costs are also heavily subsidized by the Hummel family's royalties mentioned above.

52.  Mr. A. Hummel, both individually, and in working through the Berta Hummel Museum, has for many years been active in suppressing unauthorized use of Sister Hummel's art, including inappropriate depictions thereof.

53.  In doing so, Mr. A. Hummel has been continuing a Hummel family tradition, for, as a recently published biography of Berta Hummel states:  "Maria Innocentia herself gratefully wrote to her father and brother, how much she appreciated their tireless struggle against the illicit copying [of Hummel Figurines]."

54.  Mr. A. Hummel has been informed, with supporting evidence, that in America there has been a significant infringement (the "Infringement") of the United States copyright in a particular Hummel figurine, namely, the Brother Figurine Copyright, and, further, that the

10

Infringement, by means of an infringing derivative, is an inappropriate utilization of Berta
Hummel's art.

55.  Mr. A. Hummel, B. H. Kunst, and the Hummel Museum wish to suppress the
Infringement, and to cause the infringers to pay damages, but lack the resources to carry on such
litigation in the United States.

56.  Accordingly, in order to suppress the Infringement, and to benefit the Hummel
Museum, Mr. A. Hummel and B. H. Kunst (collectively, the "Assignors") have made the
assignments to Boston set forth below in this Section V of this Complaint.

57.  Mr. A. Hummel has made an assignment (notarized)  to Boston (the "Assignment")
of  any and all of his legal ownership of the Brother Figurine Copyright resulting from the
restoration thereof pursuant to 17 U.S.C. § 104A, and from his status as successor in interest to
the author Berta Hummel; the Assignment is subject to the license from Mr. A. Hummel
referenced in paragraph 45, above.

58.  Furthermore, Mr. A. Hummel and B. H. Kunst (collectively the "Assignors") have in
the Assignment assigned to Boston their entire beneficial ownership interest in the Brother
Figurine Copyright.

59.  Without limitation of the foregoing, Mr. A. Hummel has assigned to Boston all his
rights to receive royalties from his current licensees, and from future licensees, resulting from
their lawful utilization of the Brother Figurine Copyright, and B. H. Kunst has joined in that
assignment.  Further, another Hummel family limited partnership, J. Hummel KG, has also
joined in that assignment to the extent it has any financial/beneficial interest therein.

60.  In addition to, and in the context of, the aforesaid assignments to Boston of legal and
beneficial copyright ownership in the Brother Figurine Copyright, the Assignors have granted

and assigned to Boston all of Assignors' rights, title and interest in and to pre-existing and/or accrued causes of action and claims, at law and/or in equity, against any and all natural and/or legal persons, for any and all present and past infringement and/or other violation or misuse of the Brother Figurine Copyright; included in this assignment are, without limitation, the Assignors' claims for all types of damages (including infringers' profits) and for all non-monetary equitable relief, as is provided for by Article 5 of the Copyright Act of 1976, which the Assignors (absent this assignment) could have claimed prior to this assignment, based on their legal and/or beneficial copyright ownership/interest, as a result of the aforementioned infringements and/or other violation and/or misuse of the Brother Figurine Copyright.

VI.    THE DEFENDANTS' INFRINGEMENT OF THE BROTHER  FIGURINE COPYRIGHT:

61.  The Defendants have infringed, and continue to infringe, the Brother Figurine Copyright in the manner set forth below.

62.  U-Haul is the biggest moving truck and trailer rental company in the United States, with over sixteen thousand owned and/or independent dealer outlets in North America.  U-Haul also advertises and sells, through its owned and independent outlets, and on its website, cartons and packing material, including, without limitation, a large carton of packing material called "bubble wrap."

63.  This carton of bubble wrap material (the "Bubble Wrap Carton") is sold under U-Haul's own name on the front and back of the carton, with the product name "ENVIRO-BUBBLE" and with product number "BP5."

64.  The wording on the Bubble Wrap Carton states that it contains 150 feet of "SMALL BUBBLE" with a price of "U.S. $19.95."

12

65.  Amerco is the parent company of U-Haul.  Amerco's common stock trades on the NASDAQ stock market under the symbol "UHAL."  Amerco describes itself as "The parent company of U-Haul, North America's largest 'do-it-yourself' moving and storage operator … ."

66.  As disclosed in an Amerco's Form 10-K filing with the United States Securities and Exchange Commission, Amerco has three "operating segments." U-Haul and Amerco are members of the same "Moving and Storage" operating segment, which consists of, *inter alia*, "sales of moving supplies."

67.  The Form 10-K states that for the Moving and Storage Operating segment, "Operations are conducted under the registered trade name U-Haul® throughout the United States."

68.  The Form 10-K further states that "Our moving supplies include a wide array of affordably priced *U-Haul brand* boxes, tape, and *packing supplies*."  (emphasis added)

69.  Amerco's Form 10-K further states that "Unless the context otherwise requires, the term 'AMERCO,' 'Company,' 'we,' 'us,' or 'our' refers to AMERCO, a Nevada corporation, and all its legal subsidiaries, on a consolidated basis."

70.  Furthermore, Amerco and U-Haul report, on a consolidated basis, their fiscal year annual revenues from "self-moving and self-storage products and service sales."

71.  On a recent video tour for investors on the Amerco website, there is a scene of the Chief Executive Officer of Amerco standing in front of a conveyor belt moving clearly identifiable examples of the Bubble Wrap Carton.

72.  U-Haul thus engages in the manufacture, shipping, distribution, display, advertising, and/or sale of the Bubble Wrap Carton on a nationwide basis, and, specifically, without limitation, does so in the Commonwealth of Massachusetts.

73.   Specifically, without limitation of the foregoing, U-Haul ships, and/or causes to be shipped, the Bubble Wrap Carton to Massachusetts for wholesale and/or retail sale, directly to the consumer and/or by U-Haul, Mass., and/or independent U-Haul outlets and/or Amerco/U-Haul owned outlets.

74.   In like fashion, U-Haul Mass. engages in the distribution, display, advertising, shipping and/or sale of the Bubble Wrap Carton within the Commonwealth of Massachusetts.

75.   The wording on the Bubble Wrap Carton states:

"MANUFACTURED & PACKED BY ASTRO-VALCOUR, INC.
GLEN FALLS, NY  12801"

76.   Astro-Valcour, Inc., the company named on the Bubble Wrap Carton, was acquired several years ago by the Defendant Pregis Packaging and/or its corporate holding company owner and Pregis Packaging still operates the former Astro-Valcour operating/manufacturing facility in Glenn Falls, New York referenced on the Bubble Wrap Carton.

77.   On information and belief, the Defendant Pregis Packaging manufactures the Bubble Wrap Carton's content, and packages it.  Pregis Packaging manufactures the Bubble Wrap Carton itself, and/or receives it from its own supplier(s) and/or from or on behalf of the other Defendants, and packages it with the bubble wrap content before supplying and shipping it to Amerco, U-Haul, U-Haul Mass., and/or elsewhere.

78.   One or more of the Defendants and/or their corporate subsidiaries, owners, holding companies, and/or other corporate affiliates, and/or other legal persons and/or entities owned and/or controlled by them, and/or other legal and/or natural persons at one or more of the aforementioned legal and/or natural persons' request, instigation, control, and/or expense, created a design for the front and back of the Bubble Wrap Carton, which is shown on the front

and back of the Bubble Wrap Carton that is being manufactured, displayed, advertised, shipped, and sold.

79.  There is a copyright notice on the front and back of the Bubble Wrap Carton: "©04/06 U-HAUL® INT'L."

80.  The above-mentioned design of the front and back of the Bubble Wrap Carton incorporates a large two-dimensional derivative image of a figurine (the "Carton Brother Figurine Image"). (See Attachment "A" to this Complaint, which is incorporated herein by reference).

81.  The Brother Figurine was copied to create the Carton Brother Figurine Image.

82.  The Carton Brother Figurine Image is a two-dimensional derivative work of the Brother Figurine.

83.  In creating the Carton Brother Figurine Image, the Brother Figurine was copied by one or more of the Defendants, and/or their corporate subsidiaries, owners, holding companies, and/or other corporate affiliates, and/or other legal persons owned and/or controlled by them, and/or other legal and/or natural persons, at one or more of the aforementioned legal persons, entities and/or natural persons' request, instigation, control, and/or expense.

84.  The one or more Defendants and/or one or more of the entities, legal persons, and/or natural persons referred to in the preceding paragraph who did the copying of the Brother Figurine are hereinafter referred to as the "Designer(s)."

85.  The Brother Figurine was copied by the Designer(s) to create the Carton Brother Figurine Image,

15

86.  The aforementioned copying of the Brother Figurine by the Designer(s) was done without the permission and/or authorization of any legal and/or beneficial owner of the Brother Figurine Copyright with standing to do so.

87.  The Designer(s) had access to the Brother Figurine.

88.  The Designer(s)' access to the Brother Figurine existed since it is one of the Hummel Figurines.  These have been widely advertised, sold, collected, and featured in guidebooks in the United States for many decades beginning prior to World War II.  The Brother Figurine was created in 1938, and was exported to, advertised, and sold in the United States before and after World War II.  Accordingly, except during World War II, the Brother Figurine has been widely advertised, sold at retail and on the collectibles resale markets, and featured in guidebooks, for a period of almost three quarters of a century.

89.  Attachment "B" to this Complaint, which is incorporated herein by reference, shows a photograph of the Brother Figurine on the right side, juxtaposed with a photograph of the Carton Brother Figurine Image on the left side.  To facilitate comparison, the photograph of the Brother Figurine was enlarged, and the photograph of the Carton Brother Figurine Image was reduced.

90.  There is sufficient, indeed ample, similarity between the Brother Figurine and the Carton Brother Figurine Image to justify an inference of access to, and of actual copying of, the Brother Figurine by the Designer(s).

91.  By reason of the foregoing, the degree of similarity between the Brother Figurine and the Carton Brother Figurine Image constitutes "probative similarity."

92.  The copying of the Brother Figurine by the Designer(s) was so extensive that it rendered the two works, namely, the Brother Figurine and the Carton Brother Figurine Image,

substantially similar.  By reason of the foregoing, there is substantial similarity between the Brother Figurine and the Carton Brother Figurine Image, and the copying of the Brother Figurine by the Designer(s) constituted a wrongful appropriation of protected expression by the Defendants.

93.  Without limitation of the foregoing, the Defendants' wrongful appropriation of protected expression from the Brother Figurine is rendered all the more obvious, significant and egregious by the fact that the prominent advertising on the front and back of the Bubble Wrap Carton states that its contents provide "Excellent Cushioning Protection For: . . . Figurines"; the Defendants have chosen to emphasize this by depicting a large infringing two-dimensional derivative of one of the Hummel *figurines*—the most widely known and popular collectible *figurines*.

94.  The obvious intent of the Designer(s) was that the Bubble Wrap Carton depict not merely a generic figurine, but, rather, one that would be recognized as depicting a *Hummel* figurine.  To accomplish that, the Designer(s) had the Bubble Wrap Carton depict not merely a figurine in the general style of a Hummel figurine; rather, the Designer(s) chose to depict, recognizably, one specific Hummel figurine, namely, the Brother Figurine, as the derivative Carton Brother Figurine Image.

95.  Furthermore, given the overall shape, design, and features of the derivative Carton Brother Figurine Image, the Brother Figurine can easily be identified as the underlying work in comparison to hundreds of other cataloged Hummel figurine models, including a large number with the same motif, namely, a small boy dressed in Bavarian folk costume.

96.  If the derivative work (the Carton Brother Figurine Image) did not incorporate at least that quantum of detail and protected expression from the underlying work that constitutes

17

substantial similarity and wrongful appropriation of protected expression, this easy identification

of this specific underlying work (the Brother Figurine) from many others with the same motif

and origin would not be possible.

97.  By reason of the foregoing, the copying of the Brother Figurine by the Designer(s)

constitutes an infringement by the Defendants of the Brother Figurine Copyright.

98.  By reason of the foregoing, the Carton Brother Figurine Image is an infringing

derivative work of the Brother Figurine.

99.  In addition to the infringing copying of the Brother Figurine set forth above, the

Defendants have infringed, and continue to infringe, the Brother Figurine Copyright by, inter

alia, manufacturing and/or causing to be manufactured, the Bubble Wrap Carton in mass

production, and/or advertising, distributing, selling, and shipping, the Bubble Wrap Carton

nationally, and, specifically, in the Commonwealth of Massachusetts, and/or causing/instigating,

and/or otherwise authorizing the advertising, distribution, sale and/or shipment of the Bubble

Wrap Carton nationally, and, specifically, in the Commonwealth of Massachusetts.

100.  In addition to directly infringing the Brother Figurine Copyright by means of

Amerco being in the same "operating segment" with U-Haul, as alleged above, Amerco has

direct corporate control over its wholly-owned subsidiary U-Haul by means of substantial

identity of directors, officers, and/or other management, is able to supervise U-Haul's business

and, further, derives substantial financial benefit from U-Haul's infringement of the Brother

Figurine Copyright.

101.  Further, Amerco and/or U-Haul have corporate control and responsibility over the

wholly-owned subsidiary U-Haul Mass., are able to supervise U-Haul Mass.'s business, and

derive substantial financial benefit from U-Haul Mass.'s infringement of the Brother Figurine Copyright.

102.  The Defendant Pregis has direct corporate responsibility and control for/over Pregis Packaging because of substantial identify of directors, officers, and/or other management, and is able to supervise and control Pregis Packaging's business, and derives substantial financial benefit from Pregis Packaging's infringement of the Brother Figurine Copyright.

103.  By reason of the foregoing, the Defendants have infringed, and continue to infringe, the Brother Figurine Copyright directly, and/or indirectly, by contributory infringement, because of corporate responsibility, the doctrine of respondeat superior, and/or vicarious liability.

104.  By reason of the foregoing, the Defendants are liable for the past and ongoing infringement of the Brother Figurine Copyright, on the grounds of direct infringement, vicarious liability, contributory infringement, corporate responsibility, and/or the doctrine of respondeat superior.

105.  Since the Brother Figurine is not a United States Work as defined in 17 U.S.C. § 101, registration of a claim of copyright in this work is not a prerequisite for this suit for infringement. (17 U.S.C. § 411(a)).

106.  By reason of the foregoing, Boston is entitled to preliminary and permanent injunctive relief against the Defendants pursuant to 17 U.S.C. § 502(a).

107.  Furthermore, by reason of the foregoing, Boston  is entitled to the payment of damages to Boston by the Defendants pursuant to 17 U.S.C. § 504(a)(1) and (b).

WHEREFORE, THE PLAINTIFF DEMANDS JUDGMENT:

1.  That the Defendants, their agents and/or servants be enjoined during the pendency of this action, and permanently, from infringing the Brother Figurine Copyright in any manner, and from manufacturing, advertising, marketing, shipping, and/or selling the Bubble Wrap Carton.

2.  That the Defendants shall account to Plaintiff for all gains, profits, and advantages derived by Defendants by their own, or other of the Defendants' infringement of the Brother Figurine Copyright, and to pay to Plaintiff such damages as are provided for in 17 U.S.C. § 504(a)(1) and (b).

3.  That the Defendants shall pay to Plaintiff the costs of this civil action.

4.   That the Plaintiff be granted such other and further relief as is meet and just.


 /s/ Henry Herrmann_____
HENRY HERRMANN
Attorney for Boston Copyright Associates, Ltd.
BBO No. 232120
205 Worcester Court, Suite A-2
Falmouth, Massachusetts  02540-3920
(617) 423-6096
Dated November 7, 2013            hherrmann@socialaw.com