UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BOSTON COPYRIGHT ASSOCIATES, LTD., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 13-cv-12826-IT |
| U-HAUL INTERNATIONAL, INC. et al., | * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

February 17, 2015

TALWANI, D.J.

I.  Introduction

Before the court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [#48]. The court has previously DENIED the motion without prejudice and with leave to amend as to Count 1 of the complaint. See Order [#67]. Accordingly, Plaintiff filed a Third Amended Complaint [#71] on January 23, 2015, which added allegations relevant to Count 1. Because the allegations as to Counts 2 and 3 are identical in the superseding complaint, it would serve no purpose to require Defendants to re-file their motion. Therefore, the court treats Defendants' motion as to Counts 2 and 3 as directed to the superseding complaint and ALLOWS the motion to dismiss Counts 2 and 3 of the Third Amended Complaint.[1]

II. Factual Background

The court presents the following facts in the light most favorable to Plaintiff. See Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).

---

[1] For purposes of clarity, the court includes parallel citations to Plaintiff's Second and Third Amended Complaints throughout this Memorandum and Order.

Berta Hummel is a German artist famous for her drawings of young children. See Second Am. Compl. ¶ 12 [#45] [hereinafter Second Compl.]; Third Am. Compl. ¶ 12 [#71] [hereinafter Third Compl.]. In 1934, German publisher Emil Fink published "Das Hummelbuch" ("the Hummel Book"). See Second Compl. ¶ 138; Third Compl. ¶ 155. Pursuant to a contract with Fink, Hummel contributed the graphic elements of this book, which included numerous images of children. See Second Compl. ¶¶ 145-46; Third Compl. ¶¶ 162-63. The Hummel Book is protected by copyright in the United States. See Second Compl. ¶ 136; Third Compl. ¶ 153.

The image on page forty-five of the Hummel Book is titled Hansl u. Gretl ("Hansl and Gretl"). See Second Compl. ¶¶ 193-95; Third Compl. ¶¶ 210-12. This image is a sketch of a young boy and girl in traditional Bavarian folk clothing. See Second Compl. ¶ 194, Ex. C; Third Compl. ¶ 211, Ex. C. The boy in the image is carrying what appears to be a fishing pole and is wearing a plaid shirt, short pants, suspenders with a strap running horizontally across his midsection, a scarf, and a hat with a feather. See Second Compl. Ex. C; Third Compl. Ex. C. The boy's boots are oversized, with soles upturned, and his socks are loose and crumpled. See id. He stands at a slight right angle, with his face turned down and to the left, his knees bent, and his right hand in his pocket. See Second Compl. Ex. C; Third Compl. Ex. C. He is depicted as youthfully chubby, with round cheeks and belly. See Second Compl. Ex. C; Third Compl. Ex. C. The picture includes significant detail and shading, including tonal changes in the boy's hair, the print on his shirt, the shadowing of creases in his clothing, and detailing on his boots. See Second Compl. Ex. C; Third Compl. Ex. C.[2]

---

[2] The image is originally in color. However, the copy attached to the complaint—which is all that is properly before the court at this stage, see Trans-Spec Truck Servs., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)—is black and white.

In 1935 W. Goebel Porzellanfabrik KG ("Goebel") began to manufacture a number of collectible, porcelain figurines based off of Hummel's artwork. See Second Compl. ¶¶ 13-14; Third Compl. ¶¶ 13-14. In 1938, Goebel began producing a figurine titled "Dorfheld" ("Village Hero"), which was later renamed in its English-language promotional materials as "Brother." See Second Compl. ¶¶ 16-18; Third Compl. ¶¶ 16-18. This figurine was a derivative work based on the image of Hansl in the Hummel Book. See Second Compl. ¶ 198; Third Compl. ¶ 215. The figurine depicts a young boy wearing short pants, suspenders with a horizontal strap, a hat with a feather, a jacket, and a white shirt. See Second Compl. Ex. B; Third Compl. Ex. B. The boy stands at a slight right angle, with his knees straight, both hands in his pockets, and his face upturned with his mouth open as though singing. See Second Compl. Ex. B; Third Compl. Ex. B. The soles of his shoes are upturned and his socks appear slightly rumpled. See Second Compl. Ex. B; Third Compl. Ex. B.

The Village Hero figurine is under German copyright protection, as it has been since its first production in 1938. See Second Compl. ¶ 20; Third Compl. ¶ 20. Based on noncompliance with U.S. copyright laws, however, the figurine entered the U.S. public domain sometime after its first publication in the United States. See Second Compl. ¶ 27; Third Compl. ¶ 44.[3]

Defendants manufacture and sell moving supplies, including protective packaging they call "Enviro-Bubble." See Second Compl. ¶¶ 76-79; Third Compl. ¶¶ 93-96. Consumers can purchase Enviro-Bubble in at least two sizes: a carton containing 150 square feet of packaging, sold for $19.95, and a bag containing 20 square feet of packaging, sold for $4.05. See Second

---

[3] Defendants dispute whether the figurine's U.S. copyright was restored pursuant to the Uruguay Round Agreements Act of 1994, 17 U.S.C. § 104A. The court denied without prejudice Defendants' motion to dismiss Plaintiff's claim of infringement of this allegedly restored copyright. See Order [#67]. Plaintiff's Third Amended Complaint contains additional factual allegations related to restoration of the Village Hero figurine. The sufficiency of that pleading is not currently before the court.

Compl. ¶¶ 77-80; Third Compl. ¶¶ 94-97. The carton's label states "Value Pack $ave 50%." See Second Compl. ¶ 240, Ex. A; Third Compl. ¶ 257, Ex. A.

The labels on the carton and bag include a picture of a figurine lying on a bed of protective wrapping. See Second Compl. ¶¶ 98-99, Ex. A; Third Compl. ¶¶ 115-16, Ex. A. The figurine depicted on these labels is a young boy standing at a slight right angle, with his legs straight, his hands in his pockets, his face turned up to the left, and his mouth open as if singing. See Second Compl. Ex. A; Third Compl. Ex. A. The boy is wearing short pants, suspenders without a strap across his midsection, a white shirt, a tie, a hat, and a jacket. See Second Compl. Ex. A; Third Compl. Ex. A. His boots, which are loose, have slightly upturned toes, and he is wearing white socks. See Second Compl. Ex. A; Third Compl. Ex. A. The boy is rendered in stark black and white, without shading or color gradation. See Second Compl. Ex. A; Third Compl. Ex. A.

III. Discussion

    *A. Substantial Similarity*

Count 2 of Plaintiff's complaint alleges that Defendants' Enviro-Bubble labels infringe on the Hansl image in the Hummel Book. To sustain a claim of copyright infringement, a plaintiff must show "copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). This requires: (1) "that the defendant copied the plaintiff's copyrighted work as a factual matter," and (2) "that the copying . . . was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 60 (1st Cir. 2000) (citing Feist Publ'ns, 499 U.S. at 361). Defendants seek dismissal only on the ground that the two works are not substantially similar as a matter of law.

4

Courts to consider the issue have held that, where the works in question are included in the complaint and neither party challenges their authenticity, substantial similarity may be assessed at the motion-to-dismiss stage. See e.g., Winstead v. Jackson, 509 F. App'x 139, 143 (3d Cir. 2013) ("[W]here the works in question have been submitted by the parties and are authentic, it is proper for the District Court to consider the similarity between those works in connection with a motion to dismiss."); Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2nd Cir. 2010) ("[If] the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation."); Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002) (same); Nelson v. PRN Prods., Inc., 873 F.2d 1141, 1143-44 (8th Cir. 1989) (same); see also Wild v. NBC Universal, 513 F. App'x 640, 641 & n.1 (9th Cir. 2013) (citing Christianson v. W. Pub. Co., 149 F.2d 202, 203 (9th Cir. 1945)) (similar).

Here, Plaintiff attached copies of the Enviro-Bubble carton's label and the Hansl image as exhibits to its complaint. See Second Compl. Exs. A, C; Third Compl. Exs. A, C. As both works are two-dimensional drawings, the court can conduct a full comparison of the works as they appear on the face of the complaint. Accordingly, pursuant to the weight of authority, the court finds that treating the issue of substantial similarity at this stage is not premature. See Peter F. Gaito Architecture, 602 F.3d at 64 ("If . . . the district court determines that the two works are not substantially similar as a matter of law, the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief." (internal quotations marks and citations omitted)).

To assess substantial similarity, the First Circuit uses the "ordinary observer" test. See Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33-34 (1st Cir. 2001). This test asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protected expression by taking material of substance and value." Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 607 (1st Cir. 1988) (internal quotation marks and citation omitted); see also id. (asking whether "an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" (quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960)).

In undertaking a comparison of the two works, the court must first "dissect" out the elements of those works that are not protected by copyright. See Yankee Candle, 259 F.3d at 33-34; Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 68 (1st Cir. 2009) ("[T]he substantial similarity inquiry must focus on those aspects of the copyrighted work that are original."). This rule of "dissection" recognizes that "[a]n artist can claim to own only an original manner of expressing ideas, not the ideas themselves." Concrete Mach. Co., 843 F.2d at 606 (internal quotation marks and citation omitted); see also Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998) (finding that a court may properly exclude "similarities in the two works as to elements that are *not* copyrightable—because those elements are the underlying ideas, or expressions that are not original with the plaintiff, or for some like reason").

Plaintiff and Defendants agree that stock elements of traditional Bavarian dress—such as lederhosen, stockings, suspenders, a shirt, and a hat—are common expression of an idea not original to the Hansl image and are proper for dissection.[4] See, e.g., Eden Toys, Inc. v. Marshall

---

[4] Defendants included in their moving papers a number of sources specifying the traditional dress

6

Field & Co., 675 F.2d 498, 500 (2d Cir. 1982) (finding non-protectable the stock elements of a snowman, such as coal eyes and a three-tiered body made of snowballs); Feldman v. Twentieth Century Fox Film Corp., 723 F. Supp. 2d 357, 367 (D. Mass. 2010) ("[C]opyright does not extend to stock characters, such as a blond, blue-eyed hero.").

As a preliminary matter, the court notes that, even after dissection, there are some similarities between the two works. In both works, the boys stand at right angles to the viewer, have their hands in their pockets, are wearing oversized boots, and have hair that peeks from the front of their cap. Compare Concrete Mach. Co., 843 F.2d at 611 ("Classic will have to identify more significant differences than slight variations in size or a different positioning of a statue's head [to overcome a finding of substantial similarity].”), with Harney v. Sony Pictures Television, 704 F.3d 173 (1st Cir. 2013) ("[A] piggyback pose . . . was not Harney's creation and is arguably so common that it would not be protected . . . ."). Moreover, other elements of the two works exhibit relatively insignificant differences, such as the placement of the boys' respective neckties, the shapes of their hats, or the angle of their faces. See Harney, at 177-78 (noting that some differences in the works, such as the placement of buttons on clothing, were insignificant).

Plaintiff argues, however, that Hummel's unique style of expressing these stock elements pervades both works. Plaintiff describes this style as "whimsical," explaining that:

> [Hummel's works typically depicted a] caricature of the strict orderly way Bavarian children are supposed to wear this costume. She frequently has her children wearing the traditional tight high socks sagging and in a disorderly fashion. . . . [T]he shoes are not neat and tight fitting, but . . . are loose overall,

---

of Bavaria. However, because a motion to dismiss does not properly look beyond the complaint and the materials incorporated therein, the court does not consider these materials. Rather, the court relies on Plaintiff's express statement that "Bavarian clothing, as a general stock item, idea or generic feature, are [sic] not protectable, and copyrightable." See Pl.'s Opp'n Def.s' Mot. Dismiss Pl.'s Second Am. Compl. 21 [#58].

7

much worn, and gapping at the top . . . [with] noticeable exaggerated upturned soles.

Pl.'s Opp'n Def.s' Mot. Dismiss Pl.'s Second Am. Compl. 22 [#58] (emphasis omitted).

The boy in the Hansl image has unlaced, oversized shoes, exaggeratedly crumpled socks, a softly patterned shirt, a significant bend to his knees, and is holding a fishing pole. The image evokes a sense of youthful disorder, as if the image was captured after a day spent fishing outdoors. The detailed pencil shading also exhibits a sense of softness and warmth. Overall, the whimsical style typical of Hummel's work is made clear through the imagery and artistic choices in this image.

In contrast, the Enviro-Bubble label does not include this whimsical style. It shows a boy without the youthful chubbiness of the Hansl image and who stands up straight as if at attention. The boy is wearing clothing—a plain white shirt and a black jacket—that is more formal and neat than that of the Hansl image. For example, details evident in the Hansl image, such as loose boot tongues and laces, the plaid shirt print, the exaggerated crumpling of socks, and the shadows and creasing of clothing are absent from the image on the Enviro-Bubble labels. The boy shown on the Enviro-Bubble label exhibits a sense of formality that is contrary to Hummel's expressive, whimsical style. Where the Hansl image shows a boy in playful disorder, the boy on the Enviro-Bubble label appears neatly buttoned up. The image on the Enviro-Bubble label is also rendered in stark black and white, without the shading and detail of the Hansl image. Coupled with the more formal dress and straight posture, this lack of tone and shading in the Enviro-Bubble image further evokes a sense of order that is absent from the Hansl image and in opposition to Hummel's protectable style of whimsical expression. See Harney, 704 F.3d at 187 ("[I]mportant differences in lighting and backdrop render the photos aesthetically more dissimilar than similar, notwithstanding the common positioning . . . within the frame.").

8

The court recognizes that the boy in the Enviro-Bubble image is depicted in boots that appear to be oversized and upturned, which Plaintiff claims is a typical element of Hummel's expressive style. When considered in the context of the work's other dissimilarities and overall distinct aesthetic appeal, however, the court finds that the depiction of upturned boots is an insufficient ground to find substantial similarity. See id. at 188 (recognizing the copying of a protected element, but concluding that "no jury could conclude that the similarity resulting solely from that copying is substantial"). Based on the above, the court finds that the two images lack substantial similarity as a matter of law. Accordingly, Count 2 fails to state a claim upon which relief may be granted.

B. *Declaratory Judgment Regarding Defendants' Status as a Reliance Party*

The Uruguay Round Agreements Act (the "Act") provided for the restoration of copyrights in certain eligible foreign works that, although still protected in their country of origin, had entered the public domain in the United States. See 17 U.S.C. § 104A(h)(6).

In recognition of the possibility that parties may have begun "legitimately exploiting" a later-restored work while it was in the public domain, the Act limits the potential liability of "reliance parties" for claims of infringement in restored works. See Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 156 (2d Cir. 2007). The Act defines a "reliance party" as

> any person who . . . with respect to a particular work, engages in acts, before the source country of that work becomes an eligible country, which would have violated [17 U.S.C. § 106] if the restored work had been subject to copyright protection, and who, after the source country becomes an eligible country, continues to engage in such acts.

17 U.S.C. § 104A(h)(4)(A). The Act allows reliance parties to continue to exploit certain derivative works subject only to the payment of a reasonable fee. Specifically, the Act provides that

> In the case of a derivative work that is based upon a restored work and is created . . . before the date of the enactment of the Uruguay Round Agreements Act, if the source country of the restored work is an eligible country on such date . . . a reliance party may continue to exploit that derivative work for the duration of the restored copyright if the reliance party pays to the owner of the restored copyright reasonable compensation for conduct which would be subject to a remedy for infringement but for the provisions of this paragraph.

Id. § 104A(d)(3).

In Count 3 of its complaint,[5] Plaintiff argues that use of a derivative work in violation of any law renders a party unable to receive reliance-party status and that Defendants violated Massachusetts consumer protection laws by including the phrase "Value Pack $ave 50%" on its Enviro-Bubble carton despite pricing the carton at more than half the price of purchasing 7.5 bags of Enviro-Bubble (the quantity needed to obtain an equal amount of packaging by square footage).

According to Plaintiff, because the Enviro-Bubble carton's label violated consumer protections laws, the image used therein is ineligible for copyright protection and, consequently, Defendants cannot constitute a reliance party pursuant to 17 U.S.C. § 104A(h)(4) or claim the protection available for derivative works under § 104A(d)(3). See Second Compl. ¶ 258; Third Compl. ¶ 275.

This argument rests on a misreading of the relevant statutory provisions. Plaintiff grounds its claim on 17 U.S.C. § 103, which governs the ability of a creator of a derivative work to receive copyright protection for that work. Section § 103 states that "the subject matter of copyright . . . includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists *does not extend to any part of the work in which such material has been used unlawfully*." 17 U.S.C. § 103 (emphasis added). According to

---
[5] For the purposes of addressing this count, the court adopts the presumption that U.S. copyright in the figurine was properly restored.

10

Plaintiff, to be eligible as a reliance party, a party's work must be separately copyrightable under this provision.

This argument ignores the fact that § 104A(h)(4)(A), which defines a "reliance party" makes no reference to either § 103 or to a requirement that a work used by the reliance party be eligible for copyright protection. Moreover, § 104A(h)(4)(A) defines a "reliance party," as one that "with respect to a particular work, engages in acts, . . . which would have violated § 106 [copyright infringement] if the restored work had been subject to copyright protection." 17 U.S.C. § 104A(h)(4)(A). By its express terms, this provision requires that a reliance party's work would infringe on a prior work—i.e., would be unlawful—had that original work been restored. Because an infringing work under § 106 could not be eligible for copyright protection under § 103, reading § 103 into the definition of reliance parties would render that definition meaningless.

As to the specific protections for derivative works in § 104A(d)(3), Plaintiff again ignores clear statutory language. Section § 101 defines a "derivative work" as

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work"

17 U.S.C. § 101. This definition does not use the word "unlawful" or otherwise suggest that a work's derivative status is linked to its lawful use. See id. Moreover, § 103 does not alter or limit this definition; it operates simply to provide copyright protection to some derivative works (or some elements of a particular derivative work). See id. § 103.

Section 104A(d)(3), which governs the use of derivative works by reliance parties, uses the term "derivative work," without addition of a limiting adjective such as "lawful" or

11

"copyrightable." Accordingly, the court finds no reason to read § 103's limitation on which derivative works may receive independent copyright protection into § 104A(d)(3).[6] It is more logical to read "derivative work" as used in § 104A(d)(3) to comport with that term's definition in § 101.

For the foregoing reasons, the court dismisses Plaintiff's claim for a declaratory judgment that Defendants are not reliance parties in regards to the alleged infringement of the Village Hero figurine.[7]

The court also dismisses Plaintiff's claim seeking a declaratory judgment that Defendants are not reliance parties in regards to the alleged infringement of the Hansl book. Declaratory judgments are only appropriate where there is an "actual controversy" that could be resolved by a declaration of "the rights and other legal relations" of opposing parties. See 28 U.S.C. § 2201; Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 241 (1937) ("It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."). Here, there is no dispute that the Hummel Book did not enter the public domain and was, accordingly, never restored. Moreover, the parties agree that "reliance party" refers only to a party that is using a work or derivative thereof for which copyright protection was restored pursuant to the Act. Accordingly, there is no "actual controversy" as to whether

---

[6] Because the court finds Plaintiff's claim non-meritorious on this ground, it expresses no opinion on Defendants' argument that "unlawful," as used in § 103, refers only to violations of copyright law. The court also does not reach the question of whether Defendants' labeling could constitute a violation of Massachusetts consumer protection law.

[7] Defendants retain the burden of proving eligibility as a reliance party at a later stage in this case.

Defendants would be eligible for reliance-party status for an act infringing the Hansl image and no declaratory judgment is appropriate.

IV. Conclusion

For the reasons stated above, the court treats Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [#48] as directed at the superseding complaint and allows the motion insofar as it seeks dismissal of Counts 2 and 3.

IT IS SO ORDERED.

February 17, 2015 /s/ Indira Talwani
United States District Judge

APPENDIX

 

**Enviro-Bubble label.**  
Second Compl. Ex. A; Third Compl. Ex. A.

**Hansl image.**  
Second Compl. Ex. C.; Third Compl. Ex. C.